IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Danville Division

| | | |
|---|---|---|
| **PAMELA SUE BOND,** | ) | |
| Plaintiff | ) | |
| | ) | Civil Action No. 4:13-cv-00046 |
| v. | ) | |
| | ) | |
| **SOCIAL SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| Defendant. | ) | By: Joel C. Hoppe |
| | ) | United States Magistrate Judge |

## REPORT AND RECOMMENDATION

This matter is before the Court on the Defendant's Motion to Dismiss the Plaintiff's Complaint for lack of subject-matter jurisdiction. (ECF No. 9.) The motion is before me by referral under 28 U.S.C. § 636(b)(1)(B). (*See* ECF No. 17.) After carefully reviewing the parties' briefs, exhibits, and the applicable law, I find that this Court does not have subject-matter jurisdiction in this case. Therefore, I **RECOMMEND** that the Court **GRANT** the Defendant's Motion to Dismiss (ECF No. 9), **DENY** Plaintiff's miscellaneous motions as moot (*see* ECF Nos. 8, 11, 14), and **DISMISS** this case from the Court's active docket.

I. Background

On June 6, 2011, Plaintiff Pamela Bond filed for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–434, 1381–1383f . (*See* ECF No. 10-1, 24, 28.) Bond claimed disability due to "pernicious anemia, osteoporosis, hypothyroidism, arthritis, and left-side deviation of the heart." (*Id.* 16, 20.) A Maryland state agency denied Bond's application initially (*see id.*) and upon reconsideration on January 11, 2012 (*see id.* 10, 13, 37).

Bond requested a hearing before an Administrative Law Judge ("ALJ") on January 25, 2012. (*Id.* 37.) The hearing was to be held at 11:00 a.m. on Friday, February 15, 2013, in Charlottesville, Virginia.[1] (*See* ECF No. 20-1, 1.) On December 20, 2012, the Charlottesville Office of Disability Adjudication and Review ("the Charlottesville office") mailed a Notice of Rescheduled Hearing to Bond's last known address in Ruckersville, Virginia. (*Id.*) That notice warned:

> **It Is Important That You Come To Your Rescheduled Hearing**
>
> We have set aside this time for you to come and tell an administrative law judge (ALJ) about your case. If you do not come to the hearing and it is not found you have a good reason, your request for [a] hearing may be **dismissed**. You may not receive further notice before your request for [a] hearing is dismissed.

(*Id.*) The notice also instructed Bond to immediately contact the Charlottesville office if she needed to reschedule this hearing. (*Id.* 2.) The ALJ would decide whether she had a "good reason" for requesting the change, and he would set a new hearing date if he found one. (*Id.*) If Bond did not promptly reschedule, the ALJ would also consider whether she had a good reason for the delay. (*Id.*)

On December 23, 2012, Bond signed and returned an "Acknowledgement of Receipt (Notice of Hearing)" form to the Charlottesville office. (ECF No. 20-2, 1.) There is a handwritten check mark next to the line that reads:

> **I will be present at the time and place shown on the Notice of Hearing**. If an emergency arises after I mail this form and I cannot be present, I will immediately notify you at the telephone number shown on the Notice of Hearing.

(*Id.*) The acknowledgement form again warned of the potential consequences if Bond failed to appear:

> YOUR REQUEST FOR A HEARING MAY BE DISMISSED IF YOU DO NOT ATTEND THE HEARING AND CANNOT GIVE A GOOD REASON FOR

---

[1] Bond was living in the Charlottesville area when she requested the hearing. (*See* ECF No. 10-1, 45.)

NOT ATTENDING. THE TIME AND PLACE OF THE HEARING WILL BE
CHANGED IF YOU GIVE A GOOD REASON FOR NOT ATTENDING.

(*Id.*) Bond's signature appears immediately below this warning. (*See id.*)

After speaking to "Kelly L." on January 23, 2013, Bond faxed a letter later that day to her at the Charlottesville office. (*See* ECF No. 20-3, 1–3.) Bond wrote that she had planned to represent herself at the February 15 hearing, but that "recent difficulties with housing have led [her] to ask Ms. Tina Aucht of Madison, Virginia, to represent [her] at the perspective [*sic*] hearing." (*Id.* 1.) Bond did not suggest that a physical or medical limitation might prevent her from attending the hearing.[2] (*See id.* 1–3.)

Bond again spoke to someone in the Charlottesville office on February 6, 2013. (*See* ECF No. 20-4, 1.) According to a "Report of Contact" prepared by Patricia Moyer, Bond said that she was "not sure if she will be able to make it to [the] hearing." (*Id.*) The reasons Bond reportedly gave concerned transportation and housing: Her Virginia driver's license had recently been revoked; she was homeless; and she was living with family in Maryland. (*See id.*) But that report also notes that Bond "d[id] not want to delay the case any longer by moving it to Maryland." (*Id.*) Bond said she "would be in contact regarding her transportation issues." (*Id.*)

Bond attempted to reschedule her February 15 hearing by faxing a letter to the Charlottesville office at 4:23 p.m. on February 14.[3] (*See* ECF No. 20-5, 1–2.) She loosely blamed her impending absence on insufficient transportation, limited funds, uncooperative osteoarthritis, and incompetent doctors:

> I will not be able to attend the hearing scheduled for tommorrow [*sic*] at 11:00
> AM. If I had known drivers have to secure their own driving record pertaining to

---

[2] Bond apparently sent copies of this letter to Ms. Tina Aucht, Senator Barbara Mikulski and Representative Andrew Harris. (*See* ECF No. 20-3, 3.) Bond now claims that she did not write this letter, and that "Tina Aucht was never asked to speak for [her]." (ECF No. 23-2, 1.)

[3] Bond also apparently sent copies of this letter to Senator Barbara Mikulski and Representative Andrew Harris. (*See* ECF No. 20-5, 2.) Bond admits that she wrote this letter. (*See* ECF No. 23-2, 1.)

> a Virginia driver's license, if Amtrack [*sic*] ran round trip trains between Baltimore and Charlottesville on a daily basis; if my pay check had arrived on time; if my osteoarthritis had been more cooperative earlier in the week; if Doctor Tribastone had tested my lipids on a fasting basis so that another doctor's appointment and laboratory testing weren't necessary (the $700.00 drug that was ordered might be completely unnecessary).

(ECF No. 20-5, 1.) Bond also questioned the necessity of having a hearing and instructed the ALJ to "transfer the 'case' out of [his] office to a closer address." (ECF No. 20-5, 2; *see also* ECF No. 20-4, 1.) The Charlottesville office received Bond's fax on February 15, 2013. (ECF No. 20-5, 1.) No one appeared on Bond's behalf at that morning's hearing.

The ALJ dismissed Bond's hearing request in a written order dated February 22, 2013.[4] (*See* ECF No. 10-1, 36.) He noted his authority in certain circumstances to "dismiss a request for [a] hearing if neither the claimant nor the person designated to act as the claimant's representative appears at the time and place set for the hearing." (*Id.*) The ALJ said that he could dismiss Bond's request if: (1) Bond received advanced notice "that her request for [a] hearing may be dismissed without further notice if she did not appear" as scheduled; and (2) the ALJ did not find "good cause" for Bond's absence. (*Id.* citing 20 C.F.R. §§ 404.957(b)(1)(i), 416.1457(b)(1)(i).) In determining whether Bond showed good cause, the ALJ said he would "consider any physical, mental, education[al] or linguistic limitations" that Bond might have. (*Id.*)

The ALJ concluded that Bond had received and acknowledged the required warning. (*Id.*) His good-cause analysis took into account Bond's correspondence with the Charlottesville office on January 23, February 6, and February 14, 2013. (*See* ECF No. 10-1, 36–37.) The ALJ attributed Bond's absence entirely to "transportation difficulties." (*Id.*) "Transportation

---

[4] The ALJ issued a Notice of Dismissal on the same date. (ECF No. 10-1, 33.) As required by regulation, that notice informed Bond that she could ask the Appeals Council to vacate the ALJ's dismissal order. (*See id*; *see also* 20 C.F.R. § 404.958.)

difficulties are not good cause for not appearing at a scheduled hearing," the ALJ wrote. (*Id.*) He also concluded that Bond's "last-minute request for a postponement is not good cause for not showing up at her hearing, particularly after she had been offered a change of venue, but declined it specifically in order to go forward with the already scheduled hearing." (*Id.*)

The Appeals Council received Bond's request for review on March 16, 2013.[5] (*See* ECF No. 10-1, 38.) In her letter, Bond claimed that someone from the Charlottesville office called her the week of February 15 "telling [her] that the judge wanted [her] to be present for [her] hearing." (*Id.*) Bond said that she "had a lot of trouble with [her] osteoarthritis that week," and that limited funds forced her to choose between housing and traveling to Charlottesville. (*Id.*) She also felt that she had given "good reason [*sic*] then and now" for skipping the hearing. (*Id.*) The Appeals Council refused to review the ALJ's dismissal order on April 11, 2013. (ECF No. 10-1, 41.) That made the ALJ's order binding (*see* 20 C.F.R. §§ 404.959, 416.1459), and left in effect the January 11, 2012, denial of Bond's application (*see* ECF No. 10-1, 37).

Bond filed her complaint *pro se* in this Court on August 27, 2013. (ECF No. 3.) Several exhibits are attached to her complaint, including a 10-page "Explication and Clarification of Complaint for Social Security Disability Insurance." (ECF No. 3-1, 1–10.) Bond appears to challenge the agency's denial of benefits, the ALJ's decision to dismiss her hearing request, and the Appeals Council's refusal to review the ALJ's dismissal. (*See id.* 2, 4–7, 9.) She asks this Court to award benefits without remanding her case for further proceedings. (*Id.* 9.)

On January 14, 2014, the Commissioner moved to dismiss Bond's complaint for lack of subject-matter jurisdiction. (*See* ECF Nos. 9, 10.) She argued that there is no "final decision after

---

[5] Bond claims that she did not write this letter. (*See* ECF No. 23-2, 1.) However, in her complaint, Bond said that she "immediately filed for an appeal with the regional office" after she received the ALJ's February 22 his dismissal order. (ECF No. 3-1, 4.) The substance of the "appeal" Bond describes in her complaint is strikingly similar to the March 3 request for review that the Appeals Council received on March 16. (*Compare* ECF No. 3-1, 4–5, *with* ECF No. 10-1, 38–40.)

5

a hearing" for the Court to review in Bond's case because Bond did not exhaust her administrative remedies. (*See* ECF No. 10, 2.) The Commissioner also attached several exhibits to her brief, including Bond's original application, the ALJ's dismissal notice and order, Bond's written request for Appeals Council review, and the Appeals Council's denial notice. (*See* ECF No. 10-1, 18, 22, 33, 36, 38, 41.)

On the same day, the Court mailed to Bond a *Roseboro* Notice informing her that the Social Security Administration had moved to dismiss her case. (*See* ECF No. 13.) The Court gave Bond 14 days to submit any additional "counter-affidavits or other relevant evidence contradicting, explaining, or avoiding the Defendant's evidence." (*Id.*) Bond filed her response on January 21, 2014. (*See* ECF No. 15, 1.) Many of her factual allegations addressed the Commissioner's evidence and arguments challenging the Court's jurisdiction in this case. (*See id.* 1–3.) Bond did not submit any additional evidence at that time. (*See id.*)

On March 21, 2014, I ordered the Commissioner to file several documents that she mentioned in, but did not attach to, the brief supporting her motion to dismiss. (*See* ECF No. 18.) Those documents included exhibits that the ALJ cited in his dismissal order, such as records of Bond's correspondence with the Charlottesville office. (*See id.*) The Commissioner filed the exhibits without additional briefing on April 3, 2014. (*See* ECF No. 20.) She did not request a hearing on her motion. (*See id.* 1.)

I also allowed Bond to file any additional evidence that she thought relevant to this Court's subject-matter jurisdiction. (*See* ECF No. 18.) Bond filed dozens of additional documents (mostly medical records) on March 31, April 15, and April 29, 2014. (*See generally* ECF Nos. 19, 23, 24.) Bond's April 15 filing included an affidavit addressing "the facts surrounding the Charlottesville Hearing date and the Judge O'Hara ORDER." (ECF No. 23, 1–2;

*see also* ECF No. 23-2, 1–2.) On March 31, Bond requested a "hearing to review the medical situation and determine Plaintiff's true status with regard to disabilities." (ECF No. 19, 2.)

I granted Bond's request, but expressly limited the hearing's scope to the Commissioner's motion to dismiss Bond's complaint on jurisdictional grounds. (*See* ECF No. 21.) On April 7, 2014, the Court scheduled a hearing to be held in Charlottesville on April 17, 2014. (*See id.*) Bond was to appear in person and the Commissioner's counsel was to appear via telephone. (*See id*.) On April 14, 2014, Bond telephoned the Charlottesville Clerk's Office to ask if the Court would reschedule the hearing. I agreed, and the hearing was reset for 12:00 p.m. on May 1, 2014. (*See* ECF No. 22.)

On April 29, 2014, Bond informed the Court that she "respectfully declines to attend the hearing scheduled to discuss the Robert Weigle brief."[6] (ECF No. 24, 1–2.) Nothing in Bond's filing suggested that she intended to reschedule or continue the hearing on the Commissioner's motion. (*See generally id.* 1–4; ECF No. 24-1, 1–6.) The Court canceled the hearing (ECF No. 25), and now recommends that the District Court **GRANT** the Defendant's Motion to Dismiss the Complaint (ECF No. 9).

II. Standard of Review

A defendant can challenge the court's subject-matter jurisdiction in two ways. *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). First, the defendant can argue that the plaintiff's "complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Id.* In that situation, the facts alleged in the complaint are taken as true, and the court

---

[6] Robert Weigel is the agency official "responsible for the processing of claims under Titles II and XVI of the Social Security Act . . . whenever a civil action has been filed in the Commonwealth of Virginia." (ECF No. 10-1, 1.) The Commissioner submitted with her motion to dismiss an affidavit from Weigel outlining the administrative review process, and identifying the steps that he believed Bond had completed before she filed suit in this Court. (*See id.* 1–3.)

must deny the defendant's motion if the complaint alleges facts sufficient to invoke the court's authority to resolve the dispute. *Id.*

Second, the defendant can argue that the complaint's jurisdictional allegations are false or unsubstantiated. *See id.* In that situation, the court does not assume that the plaintiff's factual allegations are true. *See id.* Rather, it "regards the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting" the defendant's motion to one for summary judgment. *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004). The court is free to weigh that evidence and to resolve factual disputes in order to determine its authority to decide a case.[7] *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995).

The plaintiff bears the burden of proving the court's subject-matter jurisdiction by a preponderance of the evidence in either situation. *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347–48 (4th Cir. 2009) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). The Court must dismiss the action if it "determines at any time" that the plaintiff has not carried her burden. Fed. R. Civ. P. 12(h)(3) (2013).

Here the Commissioner argues that the jurisdictional facts alleged in Bond's complaint are not true. (*See* ECF No. 10, 2–3.) Specifically, the Commissioner says that Bond has not "exhausted [her] administrative remedies," and that there is no "adverse decision of the Defendant which has become final" for the Court to review. (ECF No. 3, 1; *see also* ECF No. 10, 2–3.) Because Bond is *pro se*, this Court must "liberally" construe her filings, "however

---

[7] District courts should not assume this fact-finding role when the "jurisdictional facts are intertwined with the facts central to the merits of the dispute." *Adams v. v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *cf. Arbaugh v. Y & H Corp.*, 546 U.S. 500, 501 (2006) ("[I]f subject-matter jurisdiction turns on contested facts, the trial judge may be authorized to review the evidence and resolve the dispute on her own. If satisfaction of an essential element of a claim is at issue, however, the jury is the proper trier of contested facts."). That is not the case here because the merits of this dispute ultimately concern Bond's asserted right to benefits under the Social Security Act, a set of facts distinct from those relevant to the jurisdictional issue.

inartfully drafted," *Erikson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), in determining whether she has proven facts sufficient to invoke this Court's authority. I will recommend that the District Court grant the Commissioner's motion "only [if] 'the material jurisdictional facts are not in dispute and the [Commissioner] is entitled to prevail [on this issue] as a matter of law.'" *Glenn v. Lafon*, 427 F. Supp. 2d 675, 677 (W.D. Va. 2006) (quoting *Williams*, 50 F.3d at 304.)

### III. Discussion

The Social Security Act (the "Act") authorizes federal courts to review "any final decision of the Commissioner of Social Security made after a hearing" to which the plaintiff was a party.[8] 42 U.S.C. §§ 405(g), 1383(c)(3). This language "clearly limits judicial review to a particular type of agency action," and it precludes federal-court review where agency proceedings end without a hearing. *Califano v. Sanders*, 430 U.S. 99, 108 (1977). The Act does not define the phrase "final decision . . . made after a hearing." *Weinberger v. Salfi*, 422 U.S. 749, 766 (1975). Rather, its meaning was left to the Commissioner to flesh out by regulation. *Id.*

The Act's regulations set out a four-step process that will produce a "final decision" on the merits of the applicant's disability claim. *See* 20 C.F.R. § 404.900(a). An applicant who fails to timely request review at any step generally will "lose [her] right to further administrative review and [her] right to judicial review" under the statute. 20 C.F.R. § 404.900(b); *see also Salfi*, 422 U.S. at 757 (noting that § 405(g) precludes judicial review where the applicant does

---

[8] Section 405 provides the exclusive statutory grant of subject-matter jurisdiction in DIB and SSI cases. *See* 42 U.S.C. § 405(h) (ruling out jurisdiction under 28 U.S.C. §§ 1331, 1346); *Califano v. Sanders*, 430 U.S. 99, 107 (1977) (ruling out jurisdiction under the Administrative Procedure Act).

9

not exhaust administrative remedies). Requesting a hearing before an ALJ is the third step in the administrative process.[9] *See* 20 C.F.R. § 404.900(a)(3).

The regulations also authorize an ALJ to dismiss an applicant's request when the applicant does not attend her hearing. *See* 20 C.F.R. §§ 404.957(b)(1), 416.1457(b)(1). The ALJ may dismiss a hearing request under either of the following conditions:

> (i) Neither [the applicant] nor the person [she] designate[s] to act as [her] representative appears at the time and place set for the hearing and [the applicant has] *been notified before the time set for the hearing* that [her] *request for [a] hearing may be dismissed without further notice* if you did not appear at the time and place of [the] hearing, *and good cause has not been found by the administrative law judge* for [the person's] failure to appear; or
> (ii) Neither [the applicant] nor the person [she] designate[s] to act as [her] representative appears at the time and place set for the hearing and *within 10 days* after the administrative law judge mails [the applicant] a notice asking why [she] did not appear, [the applicant] *does not give a good reason* for the failure to appear.

*Id.* (emphasis added); *See also Kiiker v. Astrue*, 364 Fed App'x 408, 409 (10th Cir. 2010) (holding that the ALJ need not give an applicant who has been warned under subsection (i) a chance to explain his absence under subsection (ii)). In either scenario, the ALJ will consider "any physical, mental, educational, or linguistic limitations" that the applicant might have. 20 C.F.R. §§ 404.957(b)(2), 416.1457(b)(2).

An order dismissing a hearing request is binding unless it is vacated by the ALJ or by the Appeals Council. 20 C.F.R. §§ 404.959, 416.1459. Importantly, a binding dismissal order produces the same result as if the applicant had not timely requested the hearing: The applicant

---

[9] But the ALJ can "decide a case on the record and not conduct a hearing" if each party indicates in writing that it does not wish to appear at an oral hearing. 20 C.F.R. §§ 404.948(b)(1)(i). In that case, the ALJ's decision on the merits is "a 'final decision . . . made after a hearing' even though no oral hearing was held." *Barnes v. Colvin*, No. 5:12-cv-696, 2013 WL 6985182, at *2, n.3 (E.D.N.C. Nov. 13, 2013).

loses her right to further administrative review and her right to judicial review under the statute. 20 C.F.R. § 404.900(b).

*A. Final decision made after a hearing*

The Commissioner argues that there has been no "final decision *after a hearing*" here. (ECF No. 10, 2, 4 (emphasis added).) That is clearly correct because neither the ALJ nor the Appeals Council held a hearing in Bond's case. *See Subia v. Comm'r of Soc. Sec.*, 264 F.3d 899, 902 (9th Cir. 2001) (noting the absence of a "final decision after a hearing" where claimant refused to attend ALJ hearing). Bond concedes that fact. (*See, e.g.*, ECF No. 3-1, 6–7.)

The Commissioner also argues that the ALJ's binding dismissal order is not the type of "final decision" that Congress subjected to judicial review under § 405(g). (*See* ECF No. 10, 4.) Here, too, the Commissioner is correct. *See Kiiker,* 364 Fed App'x at 409 (holding that the Commissioner's decision to dismiss a claim because the claimant failed to appear at her hearing is not a "final decision" subject to judicial review under § 405(g)); *Subia*, 264 F.3d at 902 (holding the same); *Brandyburg v. Sullivan*, 959 F.2d 555, 562 (5th Cir. 1992) (holding the same); *Doe v. Sec'y of Health & Human Servs.*, 744 F.2d 3, 4 (1st Cir. 1984) (per curiam) (holding the same); *cf. Adams v. Heckler*, 779 F.2d 131, 133 (4th Cir. 1986) (holding that the Commissioner's "final decision" must address the *merits* of the applicant's disability claim).

Bond responds that the ALJ "abuse[d] his discretion by stating that good cause had not been found for Plaintiff's failure to appear" at the February 15 hearing. (ECF No. 15, 1.) Section 405(g) does not authorize federal courts to review alleged abuses of agency discretion in dismissing a hearing request. *Cf. Sanders*, 430 U.S. at 107–08 (holding the same where agency refuses to reopen a benefits claim). The Commissioner has not issued her "final decision" on the

merits of Bond's disability application. Thus, this Court does not have statutory authority to entertain Bond's action against the Commissioner.

Even so, the Court could have subject-matter jurisdiction to review the agency's dismissal of Bond's case if she presents a "colorable" constitutional claim regarding that dismissal that is "entirely collateral to [her] substantive claim of entitlement." *Mathews v. Eldridge*, 424 U.S. 319, 331 (1976). A constitutional claim is *not* colorable if it "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or [if it] is wholly insubstantial and frivolous." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998). "Frivolous" in this context means "implausible," foreclosed by binding precedent, or "otherwise completely devoid of merit." *Id.*

*B. Due process claim*

In the "Explication and Clarification" attached to her Complaint, Bond alleged that the ALJ "claimed to have dismissed the SSDI case because [Bond] did not show up for a hearing." (ECF No. 3-1, 5; *see also id.* 4.) She also alleged that the "Charlottesville Social Security office was notified over 24 hours in advance that the Plaintiff had several reasons for not attending." (*Id*. 4.) According to Bond, one reason was that "she was having a bout of osteoarthritis and she was unable to sit for long periods of time and/or walk." (*Id*. 5.) Bond also argued that the ALJ's "so called order for dismissal did not contain any application of law." (*Id.* 4.) Citing the regulations' "good cause" requirement, Bond said that she told the Charlottesville office that she had "a bout of osteoarthritis and did not wish to travel to Charlottesville for the hearing." (*Id.* 6.) In her response to the Commissioner's motion to dismiss, Bond added, "There is no reason to have blocked the due process of law including a new haring [*sic*] date due to the character assassination and libel included in the Judge O'Hara 'order.'" (ECF No. 15, 3.)

Reading these passages together and liberally, it appears that Bond is arguing that the ALJ misapplied 20 C.F.R. §§ 404.957(b)(2) and 416.1457(b)(2), and that the resulting dismissal violated her due process rights. This claim is at most an abuse-of-discretion argument recast as a due-process violation. *See Brandyburg*, 959 F.2d at 561. Bond and the Commissioner disagree over whether her reasons for not attending the hearing showed "good cause" under the agency's regulations. This Court has no authority to settle that dispute. *See id.*

## IV. Conclusion

Federal courts have authority to review a "final decision by the Commissioner of Social Security made after a hearing" to which the plaintiff was a party. 42 U.S.C. § 405(g). There is no "final decision . . . made after a hearing" for this Court to review in Bond's case because she failed to exhaust her administrative remedies. Nor is this one of those "rare instances" where the plaintiff has raised a colorable constitutional challenge to an otherwise unreviewable agency action. *Sanders*, 430 U.S. at 109. Accordingly, I find that subject-matter jurisdiction is lacking. Therefore, I **RECOMMEND** that the District Court **GRANT** the Defendant's Motion to Dismiss the Complaint (ECF No. 9), **DENY** Plaintiff's miscellaneous motions as moot (*see* ECF Nos. 8, 11, 14), and **DISMISS** this case from the Court's active docket.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Honorable Jackson L. Kiser, Senior United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to the *pro se* plaintiff and to all counsel of record.

ENTER: May 8, 2014

Joel C. Hoppe
United States Magistrate Judge